## DAVID W. BREID, Respondent, v. JOSEPH A. MINTRUP, Appellant.

St. Louis Court of Appeals. Opinion Filed March 2, 1920.

1. **TRUSTS: Trustees: Want of Authority: Not Liable on Executory Contracts Where Not Intended.** The fact alone that the trustee is without authority to bind the estate will not of itself render him personally liable on executory contracts, where the facts show that no such liability was intended by either party.

2. ———: ———: **Real Estate Brokers: Commissions: Knowledge of Control of Property by Trustee Insufficient to Establish Contract in That Capacity.** In an action to recover a broker's commission, the fact alone that plaintiff knew that defendant held the property as trustee is not sufficient to warrant a holding, as a matter of law, that plaintiff contracted with defendant in the latter's representative capacity, intending to hold defendant only in that capacity.

3. ———: ———: **Trustee May Render Self Personally Liable.** Though defendant held property as trustee, he could render himself personally liable upon a contract to pay a commission to a broker for effecting a sale thereof.

4. ———: ———: **When Trustee Becomes Personally Liable: Facts Stated.** If a trustee contracted with a broker without reference to the capacity in which he held the property, and with nothing to exempt himself from personal liability on the undertaking, and the broker intended, in good faith, to look to the trustee individually for his compensation, without regard to the manner or capacity in which the trustee might make conveyance of the property, then the trustee became personally bound on the contract.

5. ———: ———: **Representative or Personal Contract: Evidence: Question for the Jury.** *Held,* under the evidence, that whether a trustee in employing a broker to sell property intended to contract purely in his representative capacity, and the broker knew this and did not intend otherwise to hold defendant on the con-

tract, or whether the facts were such as to bring the case within the rule whereby liability may be cast upon defendant individually, was a question for the jury to determine.

6. EVIDENCE: Advice of Counsel: Given Defendant in Plaintiff's Absence Properly Excluded. In an action to recover a broker's commission involving a question as to whether defendant contracted individually or as trustee, testimony of defendant's counsel respecting advice said to have been given defendant by his counsel touching the matter, in plaintiff's absence, was properly excluded.

7. APPELLATE PRACTICE: Instructions: No Complaint Made in Motion for New Trial: Not Reviewable. An assignment of error in giving an instruction will not be noticed where no complaint was made of the instruction in appellant's motion for a new trial.

8. TRUSTS: Trustees: Instructions: Trustee's Authority to Sell Immaterial: Instruction Properly Refused. In an action to recover a broker's commission, where the real question involved pertained to the capacity in which defendant contracted with plaintiff, an instruction that defendant, as trustee, had no authority to sell the property except subject to liability to sale under order of the probate court for payment of bequests or debts, if any, and subject to the deed of trust, was properly refused.

Appeal from the Circuit Court of Franklin County.— *Hon. R. A. Breuer,* Judge.

AFFIRMED.

*John W. Booth* for appellant.

(1) The petition in a civil action must contain a plain statement of facts constituting the cause of action sued on. R. S. 1909, sec. 1794; Sidway v. Missouri, etc., Company, 163 Mo. 342; Moore v. Mountcastle, 72 Mo. 605; Ruebsam v. Transit Company, 108 Mo. App. 437. (2) In an action upon an express contract the plaintiff can recover only upon the particular contract alleged in his petition; and in interpreting the allegations of the petition the same are to be understood according to their legal effect. (Cases cited to Point 1.) (3) An individual may contract for the rendition of service to himself, or to a third party; he may contract individu-

ally, or in a representative character as an executor, or administrator, or trustee. His contract in any of these capacities is a different contract from every other contract to which he may be a party. And though a party without regard to the capacity in which he contracts may be liable thereon, yet, in an action against him, a general allegation "that he contracted," covers no description; gives no suggestion, of an obligation incurred in a representative capacity. So under such a general allegation (in the absence of further identification in the petition of the contract sued on), proof of a contract made in a representative capacity will not authorize judgment thereon in favor of the plaintiff. This because it must appear what contract is sued upon, and on that only can the plaintiff recover. It is not enough merely to prove a contract between the parties to the action. (See cases cited under Point 1.) (4) Trustees of express trusts have no powers other than such as may be vested in them by law, or by written instrument granting power to such trustee; and the same principle applies to executors, administrators, guardians and curators. Scott v. Royston, 223 Mo. 568; Armor v. Frey, 253 Mo. 447. (5) A trustee, in his representative capacity as trustee, is with respect to the subject of his trust, so essentially a distinct individuality, that even a judgment of a court of general jurisdiction rendered in an action to which in another capacity he is party does not bind him in his representative capacity as trustee. Dibert v. D'Arcy, 248 Mo. 617, 661; Black on Judgments (2 Ed.) sec. 536. A trustee of an express trust cannot delegate his powers. See authorities cited in Markel v. Peck, 144 Mo. App. 701. (7) A contract entered into between a trustee of an express trust and a broker for services to be rendered by the broker in procuring a purchaser for the trust property by which contract the profit to accrue over and above a fixed sum by finding a purchaser for trust property at a price in excess of such fixed sum, involves a delegation of power by a trustee, and a contract for a wrongful diversion of a part of the

trust estate; and as such is contrary to good morals, and against public policy, and therefore will not support an action by the broker, under the contract, for his portion of the purchase price of the trust company. (Especially so where the broker is also a licensed practicing attorney and solicits, his employment, as such broker, with notice of the trust, and volunteers to the trustee erroneous legal advice to the effect that such a brokerage contract is proper for the trustee to make.) Turner v. Hoyle, 95 Mo. 337; McDearmott v. Sedgwick, 140 Mo. 172; Atlee v. Fink, 75 Mo. 100; Bent v. Priest, 86 Mo. 476. (8) Where a broker claims to be entitled to compensation for services in finding a purchaser for property (trust property or not), and it appears that there was no agreement between the broker and the purchaser concerning the title or interest sold or the character of conveyance to be made, and the broker's principal and the reported purchaser disagree as to the title to be conveyed, or the character of the conveyance to be made, and the deal is never completed, and no part of the purchase money is ever paid; such proceedings do not constitute such performance of a broker's contract for selling real estate as to entitle a broker to compensation either in an action on express contract or in *quantum meruit* for the finding of a purchase of real estate. Hayden v. Grills, 26 Mo. App. 289; Hayden v. Grills, 35 Mo. App. 647 (9) Under facts as in the preceding point (8), when the broker sues for compensation and an issue in the action arises as to whether the broker's employer wrongfully prevented consummation of the deal initiated by the broker, the entire proceedings of such employer, including communications of pertinent facts to an attorney employed to give advice with respect thereto, together with the advice of such attorney, together with the pertinent conversation between the broker's principal (in person or by agent), and the principal negotiating for the purchase initiated by the broker (notwithstanding they may all have transpired out of the presence and hearing of the broker), are ad-

missible in evidence. (10) All persons dealing with a trustee with notice of his trusteeship are chargeable with notice of the particulars respecting his powers and duties as trustee. Johnson v. Payne etc. Bank, 56 Mo. App. 257. (11) A devisee and legatee in trust for a minor, of the residue of an estate that may remain after payment of debts and of other bequests of a testator, with power to sell and dispose of the same or any part thereof to the best advantage of the minor until the minor shall attain the age of eighteen years, is not thereby authorized, pending administration of the estate by an executor, to sell the real estate of the testator for the payment of debts or of prior bequests. The positions, of trustee, and of executor, under a will are entirely distinct. A power of sale given to an executor is not necessarily a power of sale to a trustee, even though the will may appoint the person named as trustee to the office of executor. How far powers given to an executor may be exercised by a trustee, and *vice versa,* is to be determined as matter of law in each case according to the particular provisions of the will under which such question may arise. Am. & Eng. Ency. of Law ( 2 Ed.) Title "Trusts," p. 955, sec. 5. (12) Whatever comes into the hands of a trustee of an express trust of proceeds of trust property must be treated by the trustee as a part of the trust estate, and he must account for it as a part of the trust estate. His grantee or assignee takes from him only such interest as he can convey, and he must account for the proceeds as trust property, and has no authority to divert it to satisfaction of debts regularly payable in the course of administration by an executor.

*James Booth* for respondent.

(1) The fact that defendant individually had no title to the property was no defense. Cook et al. v. Platt, 126 Mo. App. 553. (2) Where the broker, as here, performs his part of the contract, finds and produces a buyer, ready, able and willing to buy on the terms proposed, the

law regards the sale as made in so far as to entitle the broker to his commission; and the mere fact that a defendant under such circumstances, is unable to give a good deed, or the fact that his title is defective, constitutes no defense. Herrick v. Woodson, 143 Mo. App. 258; Selat v. Ridge, 117 Mo. 553; Charles v. Critchfield, 66 Mo. App. 442; Morgan v. Keller, 194 Mo. 663; Sallee v. Murray, 113 Mo. App. 253; Perrin v. Kimberlin, 110 Mo. App. 661; Sills v. Burge, 141 Mo. App. 148; McCray v. Pfost, 118 Mo. App. 672; Curry v. Whitmore, 110 Mo. App. 204; Connannon v. Milling Co., 156 Mo. App. 79; Reiger v. Thompson et al., 125 Mo. App. 541. (3) Where nothing is said and no agreement made as to the kind and character of title the law implies that the principal will convey a good title. Reiger v. Thompson, supra. In this case if, as defendant claims, he contracted in his representative capacity so as not to bind himself individually, then the contract was a mere nullity and unenforceable as against the estate, and defendant was individually liable on the contract. Rhodes v. Frazer, 204 S. W. 547; Bledsoe v. Lombard, 194 S. W. 518; Matson v. Pearson, 121 Mo. App. 120. (5) As to whether the contract was one by defendant in his representative capacity was, to take the most charitable view, a question for the jury. That defense, under proper instructions, was submitted to the jury, and found against defendant. This court, under such circumstances, will not review the credibility of the witnesses or the finding of the jury. Bliss v. Bliss, 142 S. W. 1081; Paul v. Telegraph Co., 164 Mo. 233; Linn v. Railroad, 164 Mo. App. 445; Distler v. Railroad, 163 Mo. App. 674. (6) The question involved in this case was, whether or not the contract was made as testified by plaintiff and his witnesses; and, in determining whether or not defendant contracted in his representative capacity, it was proper for the jury to take into consideration what the parties said and did. Internal knoweldge of the parties, uncommunicated to one another, their mental reservations and secret evasions will not be permitted to destroy the

binding effect of a contract evidenced by express words and acts. Embry v. McK. D. G. Co., 105 S. W. 777.

ALLEN, J.—This is an action to recover a broker's commission. The petition alleges that in May, 1916, plaintiff and defendant entered into a contract whereby it was agreed that if plaintiff would procure a purchaser for a certain lot and building thereon in Union, Missouri, known as the Zehrt property, defendant would pay plaintiff for said service the excess of the purchase price obtained over and above $3100. It is alleged that plaintiff performed all of the conditions of the contract on his part by procuring, within a reasonable time, a purchaser for the property who was ready, willing and able to pay the sum of $3500 therefor. After alleging defendant's refusal to pay plaintiff anything for his said services, judgment is prayed for $400.

The answer, after denying generally the allegations of the petition (except the averment that there was a certain building and lot located in Union known as the Zehrt property) avers that on February 11, 1914, one Zehrt died leaving a will which was duly admitted to probate in Franklin County, in which defendant was named as executor; that defendant qualified as such executor and remained in charge of said estate as such; that Zehrt, at the time of his death, was the owner in fee of the aforesaid real property, which was subject to a deed of trust securing a note for $2000 with interest; that Zehrt left surviving him only a minor daughter; and that by his will, after providing for payment of debts and funeral expenses and making certain bequests, all the residue of his estate was devised and bequeathed to this defendant in trust for the benefit of said minor daughter, with power to sell and dispose of any part thereof as he might think would be to the best interest of said child. It is alleged, in substance, that on and prior to the — day of May, 1916, all the property of the estate had been disposed of in accordance with the will except the real estate mentioned; and that a certain bequest of $200

remained unpaid, as did likewise the indebtedness of $2000 secured by deed of trust on said real property. And it is averred that on the — day of May, 1916, plaintiff, having notice of all of the aforesaid matters, was told by defendant that the latter valued said real estate at about $3100, and that shortly thereafter plaintiff informed defendant that he had found a purchaser therefor, viz., one Noelke, at the price of $3500, and demanded that defendant execute a conveyance thereof to Noelke on receipt of said sum, and pay plaintiff out of the purchase price the sum of $400 for his services; that defendant declined to comply with plaintiff's demand, and as one reason for so declining "expressed to plaintiff his doubt" as to having authority to sell the property without an order of the probate court. It is then averred that plaintiff was a real estate dealer and an attorney; that defendant was not learned in the law and not competent to determine whether he had authority to sell the property and pay to plaintiff $400 out of the purchase money; and that upon defendant's refusal to comply with plaintiff's demands, plaintiff, by assuring defendant that the latter had authority to so sell the property without an order of the probate court and to pay plaintiff said $400 for his services, and by threatening suit against defendant, did "overreach, deceive and frighten defendant, and thereby procured defendant's consent to convey the property to Noelke for $3500 and to pay plaintiff $400 out of the purchase price; that thereafter defendant consulted his counsel regarding the matter and was advised by counsel that he could not sell the property, without an order of the probate court to sell the same for the payment of debts and bequests, otherwise than subject to sale for the payment of such debts and bequests of the testator, and subject also to the lien of said deed of trust. And it is alleged that acting on this advice, defendant caused Noelke to be notified that a conveyance by defendant to him would convey merely the interest aforesaid in said property; that Noelke has never offered to pay defendant the said sum

of $3500 or any part thereof, and has not signified his willingness to pay the same and accept from defendant a conveyance of said property "subject to the aforesaid liens."

The reply is conventional.

The evidence shows that plaintiff is an attorney at law, as well as a real estate broker, and that the defendant is the cashier of a bank at Union; that the real property in question, which had been known in the community for many years as the Zehrt property, was a part of the estate of Herman Zehrt; and that defendant was the executor in charge of the estate, and was in possession and control of this real property as trustee under the will of said Zehrt, as alleged in the answer.

As to the transaction between plaintiff and defendant which forms the basis of this action, plaintiff testified that sometime in 1915 he happened to be in the bank of which defendant was cashier, and that defendant told him that the Zehrt property was for sale and asked him if he thought he could find a buyer therefor; that defendant said he wanted $3100 for the property; that he would pay no commission, but plaintiff could have whatever he might obtain therefor over and above $3100. And the evidence in plaintiff's behalf goes to show that in reliance upon this agreement with defendant, plaintiff procured a purchaser, one Noelke, who was ready, able and willing to purchase the property and pay therefor $3500; and that plaintiff reported this to defendant. who said that it was "all right," and that he would make a deed.

When asked if anything was said between him and defendant, before Noelke agreed to buy the property, as to defendant's "right to sell it," plaintiff said: "Not a word; he just told me that he had been trying to sell it—he wanted it sold." When asked again if any such conversation took place, he said: "Nor sir, none before." He further testified that after Noelke agreed to purchase the property defendant said that he wanted to see his counsel, Judge Booth; that some time thereafter, perhaps two or three months later, plaintiff met

defendant's counsel in the court house at Union, spoke to him in regard to the matter and went with him to the probate court and examined the Zehrt will; that defendant's counsel said that defendant "had a right to sell it;" and' that thereafter he reported this to defendant who "finally agreed to make a transfer of the property." And plaintiff's testimony is that after repeated efforts he was unable to obtain a deed from plaintiff, and that in his last communication with defendant the latter said that he would not pay plaintiff $400, but would pay him something.

Further testimony of plaintiff shows that he knew that the property belonged to the Zehrt estate, and that defendant was trustee under the Zehrt will. He denied, however, that he had seen the will, or knew the contents thereof, or that he knew that there was a deed of trust upon the property. And his testimony and that of Noelke is to the effect that nothing was said between them as to the character of the deed which the latter was to receive. In this connection, however, plaintiff said: "I just naturally supposed that as trustee he (defendant) was selling it."

Noelke testified that after he had agreed to purchase the property defendant came to him and asked him to withdraw from the sale, saying: "Do as if you were going to back out and don't want it. . . . I will make it cheaper to you. You will have it $150 or $200 cheaper. . . . And I will make you the deed." The witness said that defendant came to him three or four times in regard to the matter, finally telling him: "Keep quiet and I will make you the deed." On cross-examination he testified that he knew nothing in regard to the affairs of the Zehrt estate in the probate court until he learned thereof from defendant, or the latter's counsel, after his agreement to purchase the property.

One Vitt, called as a witness for plaintiff, testified in regard to conversations which he said that he heard between plaintiff and the defendant in the bank. His testimony substantially corroborates that of plaintiff's

as to the oral agreement between plaintiff and defendant upon which this action is based.

Defendant denied that he made an agreement with plaintiff such as shown by plaintiff's evidence. His testimony is to the effect that plaintiff came into the bank and asked him if he still had the Zehrt property for sale; that he replied in the affirmative, adding: "I guess I will have to sell it sooner or later for the debts;" that plaintiff asked him what he wanted for the property, and he told plaintiff that he thought he ought to get $3200 for it, including certain fixtures; that plaintiff then left, but returned in about a half hour saying that he sold the property and requesting plaintiff to make a deed to Noelke for a consideration of $3500, which defendant refused to do. Defendant further testified that he told plaintiff of the condition of the estate in the probate court, and that he held title to the property as trustee, and asked plaintiff if he (defendant) could make a deed to the property as trustee, and was advised by plaintiff that he could do so. His further testimony is to the effect that after consulting counsel he offered to give Noelke a deed, as trustee. He admitted that upon one occasion he told Noelke that if the latter would buy the property directly from him, and not through plaintiff, he would make the price $100 less.

The testimony of defendant's counsel is that after examining the Zehrt will he merely told plaintiff, in response to the latter's inquiry, that defendant could sell the property as trustee, under the power of sale in the will, without an order of the probate court; and that he later explained to plaintiff, and to Noelke as well, the nature of the title that would pass by such transfer. Testimony offered by defendant's counsel as to conversations between him and defendant, in plaintiff's absence, was excluded on objections of plaintiff's counsel.

It is argued that the court erred in refusing to peremptorily direct a verdict for defendant. This argument proceeds upon the theory that whatever contract

203 M. A.—37

was made between plaintiff and defendant regarding a sale of the property was made by defendant in his representative capacity, as trustee under the will; and that defendant in no way became individually liable to plaintiff.

There is no question here as to defendant's power and authority to bind the trust estate by any contract of this character. It is not contended that the contract was binding upon the estate in the hands of defendant; on the contrary the suit proceeds upon the theory that by the contract alleged to have been made by defendant with plaintiff, defendant made himself personally liable to plaintiff. It is said to be the general rule that a trustee can be held personally on contracts made by him in behalf of the trust estate in the absence of a special agreement to look only to the trust estate. [1 Perry on Trust & Trustees, p. 700, sec. 437a, and authorities cited; Koken Iron Works v. Kinealy, 86 Mo. App. 199.] But the fact alone that the trustee is without authority to bind the estate will not of itself render him personally liable upon executory contracts where the facts show that no such liability was intended by either party. [Michael v. Jones, 84 Mo. 578; Humphrey v. Jones, 71 Mo. 62; Western Cement Co. v. Jones, 8 Mo. App. 373; Hackman et al. v. Maguire, 20 Mo. App. 286.]

In the instant case it appears that at the time of the alleged oral agreement with defendant, plaintiff had knowledge of the fact that defendant was in control of this property as trustee under the will mentioned. The earlier testimony of plaintiff is somewhat confusing as to this, but being recalled, he definitely testified, on cross-examination, that he knew that this property belonged to the Zehrt estate, and that he had heard many times that defendant was trustee under the will; but, according to his testimony, he knew nothing of the terms of the trust until after he had procured a purchaser. We do not think that the fact alone that plaintiff knew that defendant held the property as trustee is sufficient to warrant us in holding, as a matter of law, that plaintiff

contracted with defendant in the latter's representative capacity, intending to hold defendant only in that capacity. If it be true that both parties, knowing all the facts, intended that the defendant should be liable upon this contract only in his capacity as trustee, then a mutual mistake of law as to the authority of the defendant to bind himself in such capacity, would not render defendant liable individually, in the absence of any promise or contract by him to that effect. [Michael v. Jones, supra.] But though defendant held the property as trustee, he could readily render himself personally liable upon a contract to pay a commission to a broker for effecting a sale thereof. And if it be true that defendant contracted with plaintiff without reference to the capacity in which he held the property, and with nothing to exempt himself from personal liability on the undertaking, and plaintiff intended, in good faith, to look to defendant individually for his compensation, without regard to the manner or capacity in which defendant might make conveyance of the property, then we think that defendant became personally bound on the contract. [See authorities, supra.]

It is clear that plaintiff's evidence tends to show that nothing was said by defendant, at the time of the making of the original contract, tending to relieve defendant from personal liability. Plaintiff's testimony is to the effect that defendant, without reservation or qualification, agreed that he would give plaintiff whatever plaintiff might obtain for the property over and above $3100. And plaintiff's evidence, as a whole, warrants the inference that he looked to defendant personally for the payment of a commission in case he effected a sale. Under all the facts and circumstances present, we are of the opinion that it was a question for the jury to determine whether defendant intended to contract purely in his representative capacity and plaintiff knew this and did not intend to otherwise hold defendant on the contract, or whether the facts were such as to bring the case within the rule stated above whereby liability

may be cast upon defendant individually. [See Michael v. Jones, supra.] And if, under the facts, the contract was one binding on defendant personally, it cannot be doubted that the evidence sufficed to show performance on the part of plaintiff entitling him to a recovery herein.

We are therefore of the opinion that the trial court did not err in refusing to direct a verdict for the defendant.

Complaint is made of the ruling of the trial court in excluding the testimony of defendant's counsel respecting advice said to have been given defendant by his counsel touching the matter, in plaintiff's absence. We perceive no error in excluding this testimony.

But one instruction was given for plaintiff. The giving thereof is assigned as error, but we are unable to notice this assignment of error for the reason that no complaint was made of this instruction in appellant's motion for a new trial.

The refusal of an instruction offered by defendant (defendant's instruction No. 2) is also assigned as error. By this instruction it was sought to have the jury told, in substance, that the defendant, as trustee, had no authority to sell the property except subject to liability to sale under order of the probate court for the payment of bequests or debts, if any, and subject to the deed of trust. It was not reversible error to refuse this instruction, for the real question involved pertained to the capacity in which the defendant contracted with plaintiff, as indicated above; and that matter was dealt with in defendant's instruction No. 3, which was given.

We perceive no reversible error in the record, and it follows that the judgment should be affirmed. It is so ordered.

*Reynolds, P. J.* and *Becker, J.,* concur.